788 A.2d 296 (2002)
JEFFERSON STREET CONDOMINIUM ASSOCIATION, Plaintiff-Appellant,
v.
Emanuel G. PAIGE, Sr., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted October 23, 2001.
Decided January 10, 2002.
*297 Robert C. Matule, Hoboken, for appellant.
Cathy C. Cardillo, Hoboken, for respondent.
Before Judges SKILLMAN, WALLACE and CARCHMAN.
The opinion of the court was delivered by CARCHMAN, J.A.D.
This appeal requires us to consider whether N.J.S.A. 2A:18-61.1(l)(2) (subsection 2) of the Anti Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12 (the Act), requires the owner of less than three condominium units to provide three years notice to evict a tenant upon sale of the unit absent a formal lease notice provision as required by N.J.S.A.2A:18-61.9 (section 61.9). The trial judge, relying in part on N.J.A.C. 5:24-1.9, held that the notice provision, clearly applicable to N.J.S.A. 2A:18-61.1(l)(1) (subsection 1), applied with equal force to subsection 2, and dismissed plaintiff 224 Jefferson Street Condominium Association's (the Association) tenancy complaint. He further concluded that absent compliance with section 61.9, the court was without jurisdiction to consider plaintiff's dispossession action. We disagree and conclude that the notice provisions of section 61.9 do not create a jurisdictional bar to actions prosecuted under subsection 2. Accordingly, we reverse and remand the matter to the Special Civil Part.
These are the facts adduced at trial. Plaintiff owns two condominiums units in an eight-unit building located in Hoboken. The condominium conversion of the eight units was effectuated by the filing of a master deed in the Hudson County Register's Office in July 1986. Thereafter, the two units were conveyed to plaintiff. Plaintiff entered into a written month-to-month lease agreement with defendant Emanuel G. Paige, Sr. in October 1998. Although defendant resided in the apartment *298 with his grandmother for an extended period of time, both parties agree that defendant is a post-conversion tenant. The penultimate provision of the lease agreement states:
31. Landlord shall provide Tenant with a sixty (60) day notice to quit pursuant to N.J.S.A.2A:18-61.1(l)(2) because the owner has contracted to sell the Unit to a buyer who wishes to personally occupy it and the Contract of Sale calls for the Unit to be vacant at the time of closing.
On March 2, 2000, plaintiff entered into a contract of sale for the unit, which was later amended to include plaintiff's obligation to serve a sixty-day notice on defendant because of the buyer's desire to personally occupy the premises. Nine days later, on March 31, 2000, Michael Van Hagan, a member of the Association, served defendant with a sixty-day Notice to Quit, terminating defendant's tenancy as of June 1, 2000. On June 1, 2000, defendant refused to vacate the premises.
Plaintiff then instituted a tenancy action in the Special Civil Part seeking possession of the unit. The trial judge concluded that defendant was entitled to three years notice prior to commencement of the tenancy action, and such requirement was jurisdictional. He then dismissed the complaint.
On appeal, plaintiff asserts that under the facts presented before the trial judge, a sixty-day notice to quit under subsection 2 was required rather than three years notice. We commence our analysis by reviewing the relevant statutory provisions. The Act was adopted in 1974 in "recognition of the severe housing shortage in the state." A.P. Dev. Corp. v. Band, 113 N.J. 485, 492, 550 A.2d 1220 (1988). The Act affords "residential tenants the right, absent good cause for eviction, to continue to live in their homes without fear of eviction ... and thereby to protect them from involuntary displacement." Morristown Mem'l Hosp. v. Wokem Mortgage & Realty Co., 192 N.J.Super. 182, 186, 469 A.2d 515 (App.Div.1983).
The Act reflects a public policy barring dispossess actions except upon strict compliance with the notice and procedural requirements of the Act. Montgomery Gateway East I v. Herrera, 261 N.J.Super. 235, 241, 618 A.2d 865 (App. Div.1992); Bayside Condos., Inc. v. Mahoney, 254 N.J.Super. 323, 325, 603 A.2d 528 (App.Div.1992). We have defined "strict compliance" as "punctilious" compliance with all of the Act's provisions, including the notice provisions. Weise v. Dover Gen. Hosp., 257 N.J.Super. 499, 504, 608 A.2d 960 (App.Div.1992) (citations omitted). We have required strict compliance even though the landlord has acted in good faith or the tenant has not been prejudiced. Ibid. As we previously observed, "the statute leaves no latitude for a judicial construction which excuses failure to give the specified notice." Vander Sterre Bros. Constr. v. Keating, 284 N.J.Super. 433, 438, 665 A.2d 779 (App.Div.1995). In sum, absent strict compliance with the requirements of the Act, a court is without jurisdiction to entertain a summary dispossession action. Bayside, supra, 254 N.J.Super. at 326-27, 603 A.2d 528; 809-811 Washington St. Assocs. v. Grego, 253 N.J.Super. 34, 42, 600 A.2d 1222 (App.Div. 1992) (noting that compliance with the Act is jurisdictional prerequisite to the institution of a summary dispossess action).
Against this framework, we now examine the provisions at issue here. The Act assures a condominium owner the right to evict a tenant whenever the owner sells the unit to a buyer who will personally occupy it. N.J.S.A. 2A:18-61.1(l). The *299 operative provisions of the Act establish varying notice requirements dependent upon the type of tenancy, post-conversion or pre-conversion, the number of units owned by a landlord in a building, and the number of units in that building.
The Act provides greater protection to pre-conversion tenants in buildings with more than three units by requiring three years notice before removal. See N.J.S.A. 2A:18-61.2(g) (providing for a three-year notice requirement for removal of pre-conversion tenants protected by N.J.S.A. 2A:18-61.1(k)). The provision before us, N.J.S.A. 2A:18-61.1(l), applying to post-conversion tenants, establishes a two month notice requirement. N.J.S.A. 2A:18-61.2(f); Kabakian v. Robert, 188 N.J.Super. 517, 520, 457 A.2d 1229 (App. Div.1983). As the parties have stipulated that defendant is a post-conversion tenant, paragraph (l) of section 2A:18-61.1 is the focus of our inquiry.
Paragraph (l) applies to all post-conversion evictions where an owner has contracted to sell the unit to a buyer who wishes to personally occupy it, and the contract for sale calls for the unit to be vacant at the time of closing. The relevant subparagraphs of paragraph (l) provide as follows:
(1) The owner of a building or mobile home park, which is constructed as or being converted to a condominium ... seeks to evict a tenant or subleasee whose initial tenancy began after the master deed ... was recorded, because the owner has contracted to sell the unit to a buyer who seeks to personally occupy it and the contract for sale calls for the unit to be vacant at the time of closing. However, no action shall be brought against a tenant under paragraph (1) of this subsection unless the tenant was given a statement in accordance with [N.J.S.A. 2A:18-61.9];

(2) The owner of three or less condominium... units seeks to evict a tenant whose initial tenancy began by rental from an owner of three or less units after the master deed ... was recorded, because the owner ... has contracted to sell the unit to a buyer who seeks to personally occupy it and the contract for sale calls for the unit to be vacant at the time of closing;
(3) The owner of a building of three residential units or less ... has contracted to sell the residential unit to a buyer who wishes to personally occupy it and the contract for sale calls for the unit to be vacant at the time of closing.

[N.J.S.A. 2A:18-61.1(l) (emphasis added).]
Section 61.9, referred to in subsection 1, provides:
Any owner who establishes with a person an initial tenancy after the master deed ... was recorded shall provide to such person at the time of applying for tenancy and at the time of establishing any rental agreement a separate statement as follows:

"STATEMENT
THIS BUILDING (PARK) IS BEING CONVERTED TO OR IS A CONDOMINIUM OR COOPERATIVE (OR FEE SIMPLE OWNERSHIP OF THE SEVERAL DWELLING UNITS OR PARK SITES). YOUR TENANCY CAN BE TERMINATED UPON 60 DAYS' NOTICE IF YOUR APARTMENT (PARK SITE) IS SOLD TO A BUYER WHO SEEKS TO PERSONALLY OCCUPY IT. IF YOU MOVE OUT AS A RESULT OF RECEIVING SUCH A NOTICE, AND THE LANDLORD ARBITRARILY FAILS TO COMPLETE THE SALE, THE LANDLORD SHALL BE LIABLE *300 FOR TREBLE DAMAGES AND COURT COSTS."
The parenthesized words shall be omitted or substituted for preceding words where appropriate. Such statement shall also be reproduced as the first clause in any written lease provided to such person.

[N.J.S.A. 2A:18-61.9.]
This notice provision is referred to not only in subsection 1, but in an administrative regulation issued by the Department of Community Affairs (DCA). This regulation states:
(a) Any tenants who begin their initial tenancy after the master deed ... is filed by the owner must be provided at the time of applying and at the establishment of a rental agreement with a separate statement conforming exactly to the words in capital letters which follow.[1] The statement must be included as the first clause of any written lease.
....
(b) If a tenant whose tenancy began after the conversion was initiated and was not given proper notice as provided in (a) above, the tenant will have the right to a three year notice as provided for in the previous portion of these regulations.
(c) If an owner has given the proper statement as part of the lease as described in (a) above, the owner will still be required to provide a 60-day notice prior to instituting court action for eviction which specified the cause in detail and is served personally as required for any eviction. The notice must say that the apartment has been sold to a buyer who seeks to personally occupy it.
[N.J.A.C. 5:24-1.9 (emphasis added).]
The regulation further provides:
(a) The landlord, whether the owner of the building or of the unit, can be liable to a former tenant in a civil action for triple damages plus attorney's fees and court costs for violating the requirements of N.J.A.C. 5:24-1.9.
(b) This penalty of triple damages plus attorney's fees and court costs is also applicable where a tenant vacates the premises after being given a notice alleging that the landlord seeks to personally occupy the premises under paragraph L of N.J.S.A. 2A:18-61.1, and the landlord thereafter arbitrarily fails to execute the contract for sale or take personal occupancy, but instead permits personal occupancy by another tenant.
....
(d) A tenant must sue in a civil court action to recover any such damages.

[N.J.A.C. 5:24-1.10.]
The trial judge held that the regulatory mandate applies not only to subsection 1, but to subsection 2, as well.
Since the parties here have stipulated that plaintiff owns two units in an eight-unit building, plaintiff has contracted to sell the unit to a buyer who wishes to personally occupy it, and the contract for sale calls for the unit to be vacant at the time of closing, subsection 2 applies. Plaintiff argues, however, that the plain language of the statute demonstrates that compliance with section 61.9 is only a jurisdictional prerequisite of subsection 1, not subsection 2. Defendant counters that the administrative regulations have applied section 61.9 to subsection 2, creating the same underlying jurisdictional requirement.
*301 In distinguishing between "the owner of a building" (subsection 1) and "the owner of three or less units" (subsection 2), the Legislature established a different requirement for the latter by mandating less stringent standards for eviction, which were based on the number of units owned or extant in the building. See Bayside, supra, 254 N.J.Super. at 327, 603 A.2d 528; Veltri v. Norwood, 195 N.J.Super. 406, 412, 479 A.2d 931 (App.Div.1984). Subsections 2 and 3, which refer to owners of three or less condominium units and owners of buildings with three or less residential units, respectively, are both silent as to the statutory notice requirement of section 61.9. We contrast this with the retention of the notice requirement in subsection 1.
Ownership of three or less condominium or residential units is substantially different from ownership of a larger and more expansive development. While providing appropriate protection to tenants under the Act, the Legislature recognized that a three-year notice provision imposed on a more modest landlord would pose an undue burden, and in essence, restrict sale of no less than one-third of the landlord's holdings in the condominium. While the regulatory scheme adopted by the DCA still exposes the miscreant landlord to financial sanctions, the Legislature has balanced the competing interests involved and endorsed a regulatory scheme that serves the interests of all involved while providing to the tenant financial protection afforded by treble damages and attorney's fees. This exemption from statutory requirements, either expressed or implied, has been previously utilized by the Legislature in distinguishing between landlord's with extensive holdings as opposed to landlord's with limited leasehold interests. See, e.g., N.J.S.A. 46:8-44 (The Truth in Renting Law) (providing an exception under its definition of landlord that exempts "dwelling units in rental premises containing not more than two such units, or in owner-occupied premises of not more than three dwelling units"); N.J.S.A. 46:8-27 (Landlord Registration Act) (stating an exception in its definition of landlord "provided that this definition shall not include owner-occupied two unit premises"). We perceive that the ultimate distinction between subsection 1 and subsection 2 landlords is entirely consistent with this legislative practice and provides a sound basis for the seemingly disparate treatment of landlords and tenants in requiring section 61.9 notice in one instance and not the other.
In divining legislative intent, we recognize that statutes must be read to:
"`effectuate the legislative intent in light of the language used and the objectives sought to be achieved.'" In re Adoption of N.J.A.C. 7:11, 149 N.J. 119, 127-28, 693 A.2d 97 (1997) (quoting Merin v. Maglaki, 126 N.J. 430, 435, 599 A.2d 1256 (1992)) (internal quotations omitted). Moreover, "`the inquiry in the ultimate analysis is to determine the true intention of the law; and to this end, the particular words are to be made responsive to the essential purpose of the law.'" Jimenez v. Baglieri, 152 N.J. 337, 351, 704 A.2d 1285 (1998) (quoting Wollen v. Borough of Fort Lee, 27 N.J. 408, 418, 142 A.2d 881 (1958)). Ultimately, statutes "are to be read with a modicum of common sense to insure that the purpose of the Legislature is upheld and preserved." Friends of Dinky Woods v. Township of West Windsor, 291 N.J.Super. 325, 333, 677 A.2d 289 (Law Div.1996).
[Gallo v. Mayor and Township Council of Lawrence, 328 N.J.Super. 117, 124, 744 A.2d 1219 (2000).]
We first look to the language of the statute. Conspicuously missing from subsection 2 and included in subsection 1 is the *302 jurisdictional requirement to adhere to the notice provisions of section 61.9.[2] Defendant concedes its absence but suggests that the "gap" in the notice requirement is filled by the regulation.
We do not read the regulation as filling any gap or extending the notice requirement to subsection 2. Subsection 1 imposes an obligation on the "owner of a building" to provide the requisite notice; the regulation refers to "any tenants" and is the converse of the subsection 1 requirement. We do not read the addition of the word "any" to enlarge the scope of what has been held to be a jurisdictional requirement of a dispossess action. See Vander Sterre, supra, 284 N.J.Super. at 443-44, 665 A.2d 779; Bayside, supra, 254 N.J.Super. at 326, 603 A.2d 528.
While we recognize the dominating principle in construing the Act that it must be construed liberally with all doubts construed in favor of a tenant, see 447 Assocs. v. Miranda, 115 N.J. 522, 529, 559 A.2d 1362 (1989); see also Amato v. Pelligrini, 246 N.J.Super. 34, 41, 586 A.2d 856 (Law Div.1990), overruled on other grounds by 809-811 Washington St., supra, 253 N.J.Super. 34, 600 A.2d 1222 (finding that any doubt in intent or interpretation of AEA is to be resolved in favor of tenant), we must consider this mandate in conjunction with the prescript that administrative regulations which are inconsistent with legislative power are invalid. New Jersey Builders Assoc. v. Fenske, 249 N.J.Super. 60, 68, 591 A.2d 1362 (App.Div. 1991). In the context of interpreting a statute, legislative intent cannot be trumped by countervailing administrative practices. New Jersey Tpk. Auth. v. American Fed. of State, County, and Mun. Employees, 150 N.J. 331, 351, 696 A.2d 585 (1997).
We recently addressed this issue in a different context. In DiVigenze v. Chrysler Corp., 345 N.J.Super. 314, 318, 785 A.2d 37 (App.Div.2001), the issue was whether a consumer could seek a remedy in Superior Court under New Jersey's Automobile Lemon Law, N.J.S.A. 56:12-29 to -49 (the Lemon Law), despite noncompliance with an administrative regulation, which created a prerequisite to pursuing not only an administrative claim, as required by statute, but also to maintaining a *303 Superior Court action. The Lemon Law expressly provides that consumers must send the manufacturer a "last chance" letter, which establishes that the claimed defect "continues to exist," prior to pursuing their statutory remedies in an administrative proceeding. See N.J.S.A. 56:12-33, -37. However, N.J.A.C. 13:45A-26.5 required consumers to send a "last chance" letter in order "[t]o initiate a claim under the Lemon Law," including any claim filed in the Superior Court. We found that this regulation was inconsistent with the statute insofar as it imposed a regulatory prerequisite to filing a Lemon Law claim in the Superior Court. DiVigenze, supra, at 318, 325-29, 785 A.2d 37. We concluded that there was "no evidence that the Legislature intended to delegate to the Division authority to change the law itself, and we conclude that those portions of the regulation that would bar a Superior Court action are inconsistent with the statute." Id. at 329, 785 A.2d 37.
We apply the reasoning of DiVigenze here. The legislative reference to the section 61.9 notice in a proceeding under subsection (l)(1) and its absence in subsection (1)(2) is a meaningful omission. The impact on the three-unit condominium owner is substantially different than "the owner of a building" containing more than three units. While we acknowledge that the agency may regulate a damage scheme to compensate tenants, it may not create a jurisdictional bar to a landlord not envisioned by the Legislature or provided for in the Act.
In sum, we conclude that the Legislative direction regarding notice and the jurisdictional impact of such notice applies, by its terms, to subsection 1 and, by its absence, not to subsection 2. We further conclude that dismissal of the complaint for failure to provide such notice in the context of a subsection 2 dispossess action was error.
Reversed and remanded.
NOTES
[1] The statement referred to is the one contained in N.J.S.A. 2A:18-61.9.
[2] The legislative history provides some limited insight into the intent of Legislature. The Senate Committee Statement to the original Assembly bill explained paragraph (l) as follows:

In the case of the sale of condominium or cooperative units in buildings with three or more units, when vacancy of a unit is made a part of the sales contract, for purposes of buyer occupancy of said unit pursuant to paragraph (l) ..., no removal of a tenant shall take place unless:
(1) Two months' notice is given prior to the institution of an action for removal ...; and
(2) The owner provides the person establishing tenancy after the recording of the master deed or agreement with an informational statement of (a) 60-day notice provisions and (b) landlord liability if he arbitrarily fails to complete the sale; such statement shall be reproduced as the first clause in any written lease.... [N.J.S.A. 2A:18-61.9.]
In the case of (a) an owner of three or less condominium or cooperative units who personally seeks to occupy one of the units or sells one such unit to a buyer for purposes of personal occupancy, when vacancy of the unit at the time of closing is a part of the terms of the sales contract, ... no removal of tenant shall take place unless
(i) the 2 months' notice requirements ... are met, but
(ii) need not provide the informational statement required in ... [N.J.S.A. 2A:18-61.9.]
Although section 2 was not enacted in the form described in the Statement, the omission of the section 61.9 language in subsection 2 is consistent with the Statement.